FILED
JAN 2 1 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALBERTA E. SCHROEDER,

                Plaintiff,

       v.

UNITED STATES OF AMERICA;
SECRETARY OF THE UNITED STATES
DEPARTMENT OF AGRICULTURE;
ADMINISTRATOR OF THE RURAL
HOUSING SERVICE, UNITED STATES
DEPARTMENT OF AGRICULTURE;
OREGON STATE DIRECTOR OF RURAL
DEVELOPMENT, UNITED STATES
DEPARTMENT OF AGRICULTURE,

            Defendant.

Civ. No. 08-1277-AC

OPINION AND
ORDER

_____

ACOSTA, Magistrate Judge:

OPINION AND ORDER              1                   {JVA}

*Introduction*

This matter is currently before the court on the parties' cross-motions for summary judgment. Plaintiff Alberta E. Schroeder ("Schroeder") alleges that Defendants have failed to implement a final determination of the National Appeals Division ("NAD"). She asks the court to order implementation by requiring Defendants to accept payment of her remaining financial obligation for the low-income rental property she owns, and to deem satisfied the encumbrances on that property so that it no longer is subject to restricted-use provisions. Defendants assert that they have implemented the NAD determination. They ask that the court leave undisturbed their interpretation of the NAD determination and permit them to conduct a new Civil Rights Impact Analysis ("CRIA") to assist them in deciding whether Schroeder may be permitted to "prepay" her program loan.

Schroeder's motion is granted and Defendants' motion is denied. Defendants failed to implement the NAD final determination within the period required by law, thus foreclosing them from post-hoc interpretations and arguments. Thus, on the record before the NAD, Schroeder's interpretation of the NAD determination is correct. Even considering Defendants' post-hoc interpretations and arguments, they committed a clear error by interpreting the NAD determination to allow them to conduct a second CRIA, as there is no reasonable basis in the determination to support that interpretation. Furthermore, the NAD previously rejected the position Defendants argue here to defend against Schroeder's claims in this lawsuit and to support their proffered interpretation. Accordingly, Defendants shall accept Schroeder's payment, clear the encumbrances on her property, and relieve the property from the restricted-use provision, within thirty days of the date of this

OPINION AND ORDER                    2                    {JVA}

opinion.[1]

*Factual Background*

The material facts are not disputed. In 1984, Schroeder purchased land and property in Heppner, Oregon, consisting of a parcel of land and six residential housing units in a single structure. The prior owner had purchased the property pursuant to a loan from the predecessor of the Rural Housing Service ("RHS"), an agency of the United States Department of Agriculture ("USDA"), as part of a program designed to stimulate investment in affordable housing for low-income and elderly people. Program regulations imposed restricted-use provisions on the property. When Schroeder purchased the property, the purchase was subject to the condition that "the restricted use was to continue for twenty years from September 1, 1984[,]" regardless of payment or non-payment of the total obligation. (Plaintiff's Concise Statement of Material Facts ¶ 1.)

In November 2004, after completing her twenty-year obligation to observe the restricted-use provisions of her agreement with RHS, Schroeder notified RHS that she wished to pay the remaining financial obligation. RHS refused to accept Schroeder's payment, claiming that she was attempting a "prepayment" of her obligation inconsistent with the Emergency Low Income Housing Protection Act ("ELIHPA"), which Congress enacted several years after Schroeder bought the property. Specifically, RHS based its position on regulation 7 C.F.R. § 3560.658(b), which sets the procedural requirements for assessing whether a borrower may prepay:

> (b) If the borrower does not elect or agree to enter an agreement in accordance with paragraph (a) of this section, then the Agency will assess the impact of prepayment on two factors: housing opportunities for minorities and the supply of decent, safe, sanitary, and affordable housing in the market area. The Agency will review relevant

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 626(c)(1).

information to determine the availability of comparable affordable housing for existing tenants in the market area and if minorities in the project, on the waiting list or in the market area will be disproportionately adversely affected by the loss of the affordable rental housing units.

(1) If restrictive-use provisions are in place, the borrower will agree to sign the restrictive-use provisions, as determined by the Agency, and at the end of the restrictive-use period, offer to sell the housing to a qualified nonprofit organization or public body in accordance with § 3560.659.

(2) If the Agency determines that prepayment will have an adverse impact on minorities, then the borrower must offer to sell to a qualified nonprofit organization or public body in accordance with the provisions of paragraph (a) of this section.

(3) If the Agency determines that the prepayment will not have an adverse effect on housing opportunities for minorities but there is not an adequate supply of decent, safe, and sanitary rental housing affordable to program eligible tenant households in the market area, the loan may be prepaid only if the borrower agrees to sign restrictive-use provisions, as determined by the Agency, to protect tenants at the time of prepayment.

(4) If the Agency determines that there is no adverse impact on minorities and there is an adequate supply of decent, safe, and sanitary rental housing affordable to program eligible tenant households in the market area the prepayment will be accepted with no further restriction.

Accordingly, RHS informed Schroeder that she must comply with the ELIHPA and, in April 2006, it commenced formal procedures to determine whether Schroeder would be allowed to prepay her loan. Schroeder disputed for several reasons that the ELIHPA applied to her agreement with RHS, but she nonetheless pursued her attempts to pay her loan through the ELIHPA process.[2]

---

[2] At the same time, Schroeder pursued alternative remedies. She filed a quiet title action in a separate federal lawsuit and instituted a separate administrative proceeding to determine whether her property is subject to the ELIHPA, which currently is before NAD. Neither proceeding nor the issues in dispute are the subject of or relevant to the court's resolution of this case.

Based on its October 2006 CRIA, the RHS concluded that Schroeder's prepayment would have an adverse effect on housing opportunities for minorities and result in a shortage of decent, safe, sanitary, and affordable housing in the market area to program-eligible tenants. In February 2007 Schroeder appealed the RHS determination to the NAD, which appeal RHS defended by arguing that the NAD lacked jurisdiction because RHS's reliance on the CRIA to deny Schroeder's request was merely a recommendation, not an "adverse decision" that could be appealed. The Hearing Officer agreed and dismissed Schroeder's appeal, and Schroeder requested Director review of the Hearing Officer's ruling in accordance with 7 C.F.R. § 11.6.

On October 11, 2007, the NAD Director reversed the Hearing Officer's determination, finding that RHS's action constituted an appealable adverse decision over which NAD had jurisdiction. Relevant to this case, RHS had argued to the Director that its CRIA showed prepayment would have had an adverse impact both on housing opportunities for minorities and on the supply of decent, safe, sanitary, and affordable housing for available program tenants. The Director specifically found that "[c]learly, RHS determined through an administrative process, memorialized in its CRIA, that prepayment of the [multifamily housing ("MFH")] loan would have an adverse effect on minorities and the supply of housing for available tenants." (Schroeder Declaration ("Decl.") (#27), Exhibit ("Ex") K at 4.) The Director remanded the matter to the Hearing Officer for a determination of Schroeder's claim on the merits.

On January 10, 2008, the merits hearing convened. Schroeder argued that the CRIA findings and conclusions were erroneous and that the CRIA actually showed sufficient numbers of available housing units in the market area, and she sought to prepay her MFH loan without restrictions. The Hearing Officer noted that RHS argued it "followed its regulations when it determined that

OPINION AND ORDER                              5                              {JVA}

prepayment would adversely affect minorities, and that prepayment would cause a shortage of available affordable housing for displaced tenants." (Rooney Decl., Ex. B at 1.)

On February 15, 2008, the NAD Hearing Officer issued his Remand Appeal Determination (hereinafter "the 2008 NAD Determination"). The Hearing Officer framed the issues for determination as whether, under the CRIA, RHS correctly determined that prepayment would: (1) adversely impact minorities, and (2) lead to inadequate supply of decent, safe, sanitary and affordable housing. The Hearing Officer first reaffirmed that RHS in fact had made an adverse determination against Schroeder:

> RHS prepared a CRIA and determined that if Appellant's owner prepays her MFH loan without restrictions, prepayment will have an adverse impact for housing opportunities for minorities, and that an adequate supply of decent, safe, and sanitary rental housing will not be available to eligible tenants in Appellant's market area. As a result, RHS determined that Appellant's owner cannot prepay her MFH loan without restrictions.

(Rooney Decl., Ex. B at 2.) The Hearing Officer found that "RHS incorrectly determined that, based on the CRIA, prepayment would have an adverse impact on housing opportunities for minorities." *Id.* at 6. Specifically, the Hearing Officer found that RHS had applied an over-inclusive definition of "minority" and that when the proper the definition was applied, none of Schroeder's tenants were minorities and prepayment therefore would not have an adverse impact on minorities. Further, the Hearing Officer found there was "no evidence to support the RHS CRIA's determination that prepayment would lead to a shortage of decent, safe and sanitary affordable housing[.]" *Id.* at 7. On this point, the Hearings Officer observed that the RHS had failed to include similar properties in outlying areas but that were part of the applicable "market area," and that the CRIA contained no data to show that the 77 available housing units that had been identified were not decent, safe,

sanitary, and affordable housing. The Hearing Officer thus concluded that Schroeder met her burden of showing the RHS's adverse decision to be erroneous and stated that his determination was "a final determination of the Department of Agriculture unless a timely request for review is filed." (Rooney Decl., Ex. B at 8.)

The Agency had fifteen days following receipt of the 2008 NAD Determination to ask for Director review of this ruling but did not do so, and Schroeder did not ask for Director review within the thirty-day period allotted to her.[3] Consequently, the 2008 NAD Determination became final on March 17, 2008. *See* 7 C.F.R § 11.8(f). Once the review deadline expired, the Agency had thirty days, to April 16, 2008, to implement the 2008 NAD Determination. *See* 7 C.F.R § 11.12(a).[4]

Schroeder wrote the RHS on April 4, 2008, after the time for requesting Director review had expired but prior to the deadline for implementing the 2008 NAD Determination, asking the RHS

---

[3] Either party may request the NAD Director review a NAD Hearing Officer's determination. The appellant must do so within thirty days of receiving the determination (7 C.F.R § 11.9(a)(1)), and the agency must do so within fifteen days of receiving the determination (7 C.F.R § 11.9(a)(2)).

[4] In its cross-motion for summary judgment, the Agency acknowledged that "after a decision has been made by NAD and the case is returned to the agency, the agency has 30 days to implement the final decision. 7 C.RF.R. [sic] § 11.12." Defendants' Memorandum of Law in Support of Defendants' Cross-Motion for Summary Judgment and Defendants' Response to Plaintiff's Motion 5. Some confusion exists about the date on which the thirty-day implementation period expired. Schroeder claimed in some of her correspondence that the date was April 16, 2008, but in other letters and in her briefing on these motions she identified it as May 1, 2008, and in her Concise Statement of Material Facts she alleged that RHS received notice of the NAD determination on May 1, 2008 (Plaintiff's Concise Statement of Material Facts ¶ 5), which would have required RHS to implement the NAD determination by Monday, June 2, 2008. Defendants never identify the date on which they believe implementation must have occurred and never directly respond to Schroeder's alleged dates, but they admit Schroeder's concise statement allegation that implementation of the NAD determination was required within thirty days of the date RHS received notice and that RHS received notice on May 1, 2008. Defendants' Response to Plaintiff's Concise Statement of Material Facts ¶ 2. Ultimately, it makes no difference here whether the implementation deadline was April 16, May 1, or June 2, 2008, because there is no dispute that Defendants did not take any action before or on June 2, 2008, to implement the NAD determination.

OPINION AND ORDER                7                {JVA}

to implement the determination. Schroeder specifically stated in her letter that the 2008 NAD Determination concluded that her "tendered payment is excepted from [ELIHPA] constraints," and asked that RHS complete the documents necessary to satisfy the encumbrances." (Schroeder Decl. (#14) Ex. B.) RHS never responded to this letter.

Schroeder again wrote the Secretary of the United States Department of Agriculture on July 6, 2008, asking that it implement the determination. On August 15, 2008, the Oregon state director of the USDA's Rural Development section, wrote to Schroeder to acknowledge the request in her July 2008 letter and to explain in part RHS's position:

> You, in turn, appealed our civil rights analysis and won the appeal. The National Appeals Division, however, never understood that the Agency did not deny prepayment based on the civil rights assessment or that we do not make our "impact on housing decision" using a civil rights determination. Nevertheless, we recognized the need for a new impact on minority decision and an initial "need for the housing" decision. Once that is completed, you will be advised of our findings and the next steps that need to be followed to consummate your prepayment. The Agency thus contends (holds, maintains, asserts) that the process found in the regulations at 7 CFR 3560, Subpart N, Housing Preservation, has not been exhausted as of this writing and that until the process is completed the Agency has no authority to accept repayment of your loan.

(Schroeder Decl. (#22), Ex. N at 2.) Schroeder exchanged additional correspondence with Defendants for several more months, with each party reasserting their interpretation of the NAD determination. Schroeder filed this lawsuit on October 28, 2008, to compel enforcement of her interpretation of the NAD determination.

However, on October 27, 2008, RHS certified a second CRIA, which purported to be part of Schroeder's original administrative process and which found that granting Schroeder's request would not adversely impact minorities but would result in a shortage of safe, decent, sanitary, and affordable housing for program participants. Schroeder appealed this adverse decision to the NAD,

arguing that the 2008 NAD Determination had "previously determined the comparable housing availability issue in her favor." (2009 NAD Determination 1.)  On May 15, 2009, the Hearing Officer concluded that the original Remand Decision (i.e., the 2008 NAD Determination), was administratively final and determined, as a matter of law, that Schroeder satisfied the requirements of ELIHPA.  The Agency requested director review of this determination (hereinafter "the 2009 NAD Determination").  On August 21, 2009, the Director reversed the Hearing Officer's decision and ruled in favor of the Agency.  Schroeder requested reconsideration of this decision, which was denied on November 6, 2009.  The Director's reversal became final on that date.

During this same time period, the Ninth Circuit issued a decision in Schroeder's appeal of the district court decision on her quiet title lawsuit.  The appellate court's July 22, 2009, opinion affirmed the district court's ruling that the ELIHPA applied to Schroeder's request to prepay and thus imposed additional restrictions on Schroeder's federal loan, beyond the terms of the loan agreement. The court wrote: "The regulations interpreting ELIHPA define a loan 'prepayment' as '[p]ayment in full of the outstanding balance on an Agency loan prior to the note's originally scheduled maturity date.'" *Schroeder v. United States*, 569 F.3d 956, 962 (9th Cir. 2009) (quoting 7 C.F.R. § 3560.11). The court reasoned that because the maturity dates of the original loans were 2015 and 2034, "Schroeder's 2004 attempted payment constituted a prepayment under the applicable regulations." *Id*. Furthermore, because Schroeder' loans were subject to ELIHPA requirements, Schroder must comply with ELIHPA and, accordingly, may not prepay "until either (1) she completes the prepayment procedures outlined in ELIHPA; or (2) the loan period expires." *Id*. at 963.[5]

---

[5] The only issue in Schroeder's quiet title action was whether or not the ELIHPA applied to Schroeder's loan. In the instant case, Schroeder argued that even if the ELIHPA applied to her loan, she has fulfilled the procedural preconditions to prepay her loan. Thus, Schroder never challenged

The parties now dispute what action Defendants were required to take to correctly implement the 2008 NAD determination. The parties also dispute the appropriateness of the second CRIA, and the effect of the 2009 NAD Determination and Director's reversal of that determination.

*Legal Standard*

The judicial review provisions of the Administrative Procedures Act ("APA") "apply, according to the provisions thereof, except to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (2009). Where that preliminary requirement is met, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2009). As a general matter, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001), *superseded by statute on other grounds* (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 670 (1986) (additional citations omitted)). The APA applies to review of NAD determinations. *Lane v. USDA*, 120 F.3d 106, 109 (8th Cir. 1997).

An agency action is subject to judicial review where it is "made reviewable by statute," or is a "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704 (2009). "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706 (2009). The court is authorized to "compel agency action unlawfully withheld or unreasonably delayed" and "hold

_____

in this case the applicability of the ELIHPA provisions to her loan, as that was the subject of her quiet title action.

OPINION AND ORDER                           10                           {JVA}

unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §§ 706(1) and (2)(A) (2009).

An unappealed NAD determination is a final administrative decision. *See* 7 U.S.C. § 6999 (2008) ("A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with [the APA].").  *See also Enterprise National Bank v. Johanns*, 539 F. Supp. 2d 343, 345 (D.C. Cir. 2008) ("Neither the Bank nor the Agency appealed this Hearing Officer's determination; thus, the Remand Appeal Determination remains intact as the ultimate administrative decision regarding this case.").  As such, the court reviews the matter under the arbitrary and capricious standard. 5 U.S.C. §§ 706(2).  This standard of review is "highly deferential" to the agency, *Enterprise National Bank*, 539 F. Supp. 2d at 345, so that the court need not find that the agency's interpretation is the only reasonable one. *American Paper Institute, Inc. v. American Elec. Power Service Corp.*, 461 U.S. 402, 422 (1983).  The court may not substitute its judgment for that of the agency, but must consider whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).  The court's review is confined to the full administrative record before the agency at the time the decision was made. *Enterprise National Bank*, 539 F. Supp. 2d at 345.

*Discussion*

A.  <u>Effect of Agency's Failure to Implement within Regulatory Time Period</u>

The initial question for the court is the effect on Schroeder's claims of RHS's failure to implement the 2008 NAD Determination on or before the deadline set by the governing regulations.

Although the parties never actually agree on the exact deadline, neither do they ever directly register disagreement over any of the three possible deadlines that Schroeder identifies in her various briefs and exhibits. Combining Defendants' admission that they received notice of the 2008 NAD Determination on May 1, 2008, and their admission that implementation was to have occurred within thirty days of their receipt of that notice, the latest date by which implementation of the 2008 NAD Determination should have occurred is Monday, June 2, 2008.[6]

There is no question that neither RHS nor any of the Defendants took any action to implement the NAD determination on or before that date. The regulations define "implement" as "[t]he taking of action by an agency of the Department in order fully and promptly to effectuate a final determination of the Division." 7 C.F.R. §11.1 (2009). RHS took no action by the deadline; in fact, the first action of record by any of the Defendants regarding the 2008 NAD Determination is RHS's August 15, 2008, letter to Schroeder in which RHS informs her that it will conduct a new CRIA. Assuming for purposes of this issue that RHS's August 15, 2008, letter constitutes "implementation," its action did not occur until two and one-half months after the latest date by which RHS should have implemented the 2008 NAD Determination.

The statutes and regulations do not specify the consequences of an agency's violation of the deadlines established by the regulations, but the logical implication is that such violation precludes the agency in an enforcement action such as Schroeder's from offering post-deadline interpretations of a NAD determination and new arguments to support its original actions. A contrary conclusion would violate a basic principle in these cases, that the court's review is confined to the full

---

[6] The thirtieth day after May 1, 2008, was May 31, 2008, a Saturday. June 2, 2008, was the first business day following the May 31, 2008, deadline.

administrative record before the agency at the time the decision was made. *See Enterprise National Bank*, 539 F. Supp. 2d at 345 ("[J]udicial review is confined to the full administrative record before the agency at the time the decision was made."); *Milena Ship Management Co. v. Newcomb*, 995 F.2d 620, 624 (5th Cir. 1993) ("[W]e base our review of an administrative action 'on the full administrative record that was before the [administrative officer] . . . at the time he made his decision.'"). *See also Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008) ("[W]e are forbidden to consider [post hoc rationalizations] in conducting review under the APA. . . . We are limited to the explanations offered by the agency in the administrative record."); *Doty v. U.S.*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).  Thus, in a subsequent enforcement lawsuit, declarations offered by an agency to justify its actions are outside the administrative record and not admissible. *First National Bank v. Glickman*, No. 5-97-CV-133-C, 1998 U.S. Dist. LEXIS 22433 (N.D. Tex. April 3, 1998) ("Thus, the Secretary's declaration is . . . inadmissible as a matter of law under the judicial review guidelines of the Administrative Procedures Act. The declaration does not recite or refer to matters contained in the administrative record, nor does the government support it with any part of or excepts from the administrative record[.]").

This conclusion also preserves the purpose and integrity of the review process established in the regulations.  Either party may seek Director review of a NAD determination, which process give the parties additional opportunity to make and respond to arguments challenging and supporting a NAD determination.  If a reviewing court considers an agency's post-hoc justifications for its

actions, the Director review process is at best undermined and at worst effectively circumvented. Furthermore, consideration of new reasons for an agency's decision allows an agency to cause unwarranted, and perhaps limitless, delay of a dispute's final resolution.

To be sure, reasonable application of this rule would allow an agency to begin actions of record within the thirty-day deadline period where full implementation of a NAD determination could require more than thirty days to accomplish. However, even under this view an agency must take affirmative and formal steps to begin the implementation process within the thirty-day period. Here there is no dispute that RHS took no steps of record to implement or begin implementing the 2008 NAD Determination by or before the latest date for implementation.

In sum, the administrative record in this case closed on June 2, 2008, and encompassed only those actions of record that occurred by that date. Reviewing that record, the court finds that Defendants failed to implement or take any steps to begin implementing the 2008 NAD Determination within the time required under the controlling regulations. Therefore, Defendants are precluded from offering any interpretation or argument not made and on the record before the record closed.

B.      Implementation of the 2008 NAD Determination

The court next turns to the central issue in this action, the proper implementation of the 2008 NAD Determination. Schroeder asks the to court enforce the 2008 NAD Determination to permit her to prepay her obligation and extinguish the encumbrances from the property. Defendants contend that they have properly implemented the 2008 NAD Determination by conducting a second CRIA to correct the deficiencies the Hearing Office identified in his Determination.

The court concludes that proper implementation of the 2008 NAD Determination requires

RHS to accept Schroeder's prepayment and clear all encumbrances and restrictions on the property. The Hearing Officer explicitly found as incorrect RHS's determinations that Schroeder could not be permitted to prepay her obligation because prepayment would trigger both of the regulation's prohibited outcomes: an adverse impact on minorities and a detrimental effect on the adequate supply of decent, safe, and sanitary affordable rental housing for program-eligible tenants in the market area. Specifically, he found that RHS had applied the incorrect definition of "minorities" and, consequently, that RHS had used an over-inclusive definition to identify minorities. The Hearing Officer also found RHS's assertion of an adverse impact on safe and affordable housing in the market area not supported by the CRIA because the CRIA contained no data to substantiate that assertion.

Furthermore, the Hearing Officer also found that the evidence showed that neither prohibited condition existed. First, the Hearing Officer found that when the correct definition of "minority" was applied, the CRIA showed minorities would not be adversely effected by allowing Schroeder to prepay her obligation. Second, the Hearing Officer found that RHS had used an under-inclusive market area in identifying available housing, and that RHS had failed to establish that the housing that was identified was "not decent, safe, and sanitary affordable housing." In other words, and as Schroeder argued to the Hearing Officer, the RHS's own "CRIA shows there were adequate numbers of available housing units in the market area[.]"

RHS denied Schroeder's prepayment request because it had determined that permitting her to prepay would trigger both conditions prohibited by 7 C.F.R. § 3560.658(b). RHS asserted this interpretation to the Hearing Officer as the reason for denying Schroeder's request and used its interpretation to support its argument that it properly denied Schroeder's request. The administrative

OPINION AND ORDER                    15                    {JVA}

record discloses no other reason offered by RHS in support of its position.    Nor does the administrative record contain any argument by RHS that it was entitled to or should be permitted to conduct another CRIA if the NAD rejected RHS's determination.    And, nothing in the record indicates that other requirements existed that Schroeder must satisfy as a condition to RHS accepting her prepayment.    In fact, the statute relied upon by RHS is to the contrary:

> If the borrower does not elect or agree to enter an agreement in accordance with paragraph (a) of this section, then the Agency will assess the impact of prepayment on two factors: housing opportunities for minorities and the supply of decent, safe, sanitary, and affordable housing in the market area.  The Agency will review relevant information to determine the availability of comparable affordable housing for existing tenants in the market area and if minorities in the project, on the waiting list or in the market area will be disproportionately adversely affected by the loss of the affordable rental housing units. . . . *If the Agency determines that there is no adverse impact on minorities and there is an adequate supply of decent, safe, and sanitary rental housing affordable to program eligible tenant households in the market area the prepayment will be accepted with no further restriction.*

7 C.F.R. § 3560.658(b) (2008) (emphasis added).

Thus, once the Hearing Officer rejected RHS's determinations as incorrect and found, on the record before him, that RHS's CRIA showed prepayment would not trigger either prohibited condition, Schroeder was entitled to have her prepayment accepted and RHS was required to clear all encumbrances and restrictions from the property.    The plain language of 7 C.F.R. § 3560.658(b)(4) allows for no other result, as it directs that "[i]f the Agency determines that there is no adverse impact on minorities and there is an adequate supply of decent, safe, and sanitary rental housing affordable to program eligible tenant households in the market area *the prepayment will be accepted with no further restriction.*" (Emphasis added.)

Accordingly, Schroeder's motion for summary judgment is granted and Defendants' motion for summary judgment is denied.  Defendants must accept Schroeder's prepayment and clear all

encumbrances and restrictions from the property within thirty days of the date of this opinion.

C.    RHS's Post-Hoc Interpretation of the 2008 NAD Determination

Even if the court considers Defendants' post-hoc interpretations of the NAD determination and its arguments in support of that interpretation, the court still must grant Schroeder's motion and deny Defendants' motion. As an initial observation, Defendants' original position regarding the NAD determination differs from the position they offer in the court action; indeed, their position appears to have shifted and evolved as they traded written arguments with Schroeder and then defended their actions in this lawsuit. Defendants' arguments distill into three contentions: (1) the NAD did not understand RHS's argument at the administrative level, (2) the 2008 NAD Determination permits RHS to conduct a new CRIA, and (3) RHS cannot accept Schroeder's prepayment because additional regulatory requirements must be satisfied before prepayment could be accepted. None of these positions have merit.

   *1. NAD's understanding of RHS's position at the administrative level*

RHS's August 15, 2008, letter to Schroeder was Defendants' first response of any kind to the 2008 NAD Determination. In that letter RHS stated that the Hearing Officer "never understood that the Agency did not deny prepayment based on the [CRIA] or that we do not make our 'impact on housing decision' using a [CRIA]." (Schroeder Decl. (#22), Ex. N at 2.) This interpretation, which at least in part underlies RHS's subsequent implementation efforts, is patently unreasonable.

A NAD determination not timely appealed becomes a final agency decision. *See Enterprise National Bank*, 539 F. Supp. 2d at 345 ("Neither the Bank nor the Agency appealed this Hearing Officer's determination; thus, the Remand Appeal Determination remains intact as the ultimate administrative decision regarding this case."); *see also United States v. Utah Constr. & Mining Co.*,

OPINION AND ORDER                                    17                                    {JVA}

384 U.S. 394, 421 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

RHS never requested Director review of the Hearing Officer's decision on any ground, including that the Hearing Officer did not understand RHS's position. Consequently, when the time for exercising RHS's regulatory right to seek review expired, the 2008 NAD Determination became final. At that point, RHS no longer had the right to challenge or question the 2008 NAD Determination and was required to implement that decision. By interpreting the 2008 NAD Determination as incorrect on the merits of its position, RHS committed a clear error in judgment. For this reason, the court finds as arbitrary and capricious Defendants' interpretation of the 2008 NAD Determination.

### 2. Conducting a new CRIA

In its August 15, 2008, letter, RHS stated that it "nevertheless [] recognize[d] the need for a new impact on minority decision and an initial 'need for the housing' decision." (Schroeder Decl. (#22), Ex. N at 2.) First, it is unclear the extent to which RHS "recognized" the need for a new CRIA based on its interpretation that the Hearing Officer did not understand that it did not base its denial of Schroeder's prepayment request on the original CRIA. As discussed above, however, any reliance by RHS on this interpretation is without merit.

Second, RHS may well have "recognized" the need for a new CRIA, but this does not interpret the 2008 NAD Determination, because the determination contains no directive that RHS conduct a second CRIA, nor does it state or suggest that a new CRIA is needed or desirable. RHS argues that it "interpreted the Remand Appeal Determination to mean that the CRIA report was

OPINION AND ORDER          18          {JVA}

erroneous and could be corrected in a new report." (Defendants' Memorandum of Law in Support of Defendants' Cross Motion for Summary Judgment 9.)    According to RHS, the 2008 NAD Determination did not order it to allow prepayment, but rather "implie[d] a curing of the so-called adverse decision to which the Agency never agreed to having made." *Id.* (quoting Rooney Decl. ¶ 13, emphasis omitted).  The court rejects this argument because the 2008 NAD Determination does not support it.

First, the 2008 NAD Determination explicitly found that the Agency's adverse decision was erroneous because neither of the of adverse impacts that would prevent prepayment were present.  As a matter of law, where prepayment would not implicate either of the two adverse impacts, the Agency must allow prepayment and the controlling statute, quoted above, makes this clear.  Thus, Schroeder's prepayment would not trigger the conditions that prevent prepayment and RHS was required to accept her prepayment; it was not authorized to conduct a new CRIA.

Second, the 2008 NAD Determination could not have contemplated or allowed the inference that RHS could conduct a second CRIA to correct the original CRIA, because at no point did RHS argue that the original CRIA was deficient in any way.  RHS never argued to the Hearing Officer that the initial CRIA was flawed or that it lacked necessary data, that RHS needed additional data relevant to the CRIA, or that a new CRIA should be conducted.  In fact, RHS took precisely the opposite position regarding its CRIA: RHS's sole argument at the administrative level was that the CRIA demonstrated that granting Schroeder's prepayment request would trigger both of the conditions prohibited by 7 C.F.R. § 3560.658(b)(4).  Thus, RHS's argument that the 2008 NAD Determination allowed for a second CRIA to correct the initial CRIA has no basis in the record and,

thus, is arbitrary and capricious.[7]

That RHS did not interpret the 2008 NAD Determination is also confirmed by the declaration submitted by RHS Multi-Family Housing Specialist Stanley J. Rooney, Jr., in support of Defendants' cross-motion. Rooney states: "I interpreted the NAD Remand Determination to mean RHS should redo the CRIA assessment and make, for the first time, a market supply assessment." (Declaration of Stanley J. Rooney, Jr. ("Rooney Decl.") ¶ 12.) However, Rooney offers no explanation for this interpretation nor does he cite language from the 2008 NAD Determination that supports this proffered interpretation. As importantly, Rooney's declaration omits any testimony to establish that he made and submitted on the record this interpretation within the time limit set by the governing regulations. At best, Rooney's declaration offers post-hoc reasons which this court may not consider. *See First National Bank v. Glickman*, No. 5-97-CV-133-C, 1998 U.S. Dist. LEXIS 22433 (N.D. Tex. April 3, 1998) ("Thus, the Secretary's declaration is . . . inadmissible as a matter of law under the judicial review guidelines of the Administrative Procedures Act. The declaration does not recite or refer to matters contained in the administrative record, nor does the government support it with any part of or excepts from the administrative record[.]").

Third, Defendants' argument that the regulation's conditions were not satisfied was rejected by the NAD. RHS initially contended it had not made such a determination. Upon Director review,

---

[7] The regulation's language "[i]f the Agency determines" could be read to imply that the Agency must make an affirmative determination whether or not the prohibited conditions are triggered, regardless of the NAD determination. Such a reading is incorrect for two reasons. First, and as the Hearing Officer noted in his decision, a NAD determination "is a final determination of the Department of Agriculture unless a timely request for review is filed." Second, such a reading would permit the Agency to indefinitely frustrate implementation of an adverse NAD determination by contending that it never actually made a "determination," which result would render the NAD process meaningless.

this contention was rejected and the Director remanded Schroeder's case to the Hearing Officer for a determination on the merits of her claims. Thus, when the Hearing Officer undertook the hearing on the merits on January 10, 2008, RHS's contention that it had never made an adverse determination based on the original CRIA was decided against it.

Defendants rely on *Enterprise National Bank v. Johann*, 539 F. Supp. 2d 343 (D.D.C. 2008), to support their contention that Rooney's interpretation is reasonable and is entitled to deference, but that case is distinguishable. There, the bank sought payment of its claim on a defaulted loan that the USDA ("agency") had guaranteed. The agency denied the bank's request, citing the bank's alleged deficient processing and monitoring of the loan, its failure to comply with several covenants of controlling lending agreements, and its general negligence in performing its obligations, each of which were exceptions to the agency's obligation to pay a defaulted guaranteed loan. The bank appealed the agency's decision to the NAD. Ultimately, the Hearing Officer issued a determination that found the bank negligent in performing two of its obligations, but also indicated that "he could not support the Agency's determination to fully reduce the Loan Note Guarantee." *Id.* at 345. Neither the bank nor the agency appealed the NAD determination. The agency interpreted the NAD determination by deducting from the bank's loss claim the two losses the Hearing Officer found to be the result of the bank's negligence, and sending the bank a check for the difference. The bank filed an enforcement action in district court, claiming that NAD determination required the agency to pay the bank's claim in full, without any deductions.

The court upheld the agency's interpretation of the NAD determination. Key to this holding is that the NAD determination contained express findings that the bank had been responsible for some part of its loss. The court observed that while neither the bank's nor the agency's

interpretations were unreasonable, "[t]he highly deferential standard of review requires that this court uphold the agency action so long as it is not arbitrary and capricious, even if the action is not the most reasonable one or the one this court would have reached. . . . Under this standard, deduction from the overall loss claim of two losses that were found to be due to the Bank's negligence was not unreasonable and cannot be considered arbitrary and capricious." *Id.* at 346-47 (citation omitted).

Unlike the NAD determination in *Enterprise Bank*, the 2008 NAD Determination here contained no finding that supports RHS's interpretation. RHS cites no language from the 2008 NAD Determination that directly or indirectly supports the interpretation that implementation of the 2008 NAD Determination required conducting a second CRIA. As previously discussed, the 2008 NAD Determination is contrary to that interpretation, as the Hearing Officer concluded that the CRIA in fact supported the conclusion that neither of the two prohibited effects would be triggered by allowing Schroeder to prepay her loan.

RHS's position here that the 2008 NAD Determination authorized a "redo" of the CRIA is similar to the position taken by the Secretary of the Department of Agriculture in *First National Bank v. Glickman*, No. 5097-CV-133-C, 1998 U.S. Dist. LEXIS 22433 (N.D. Tex. 1998), and rejected by the court in that case. The bank submitted a loan guaranty application to the Farmers Home Administration ("FHA") on behalf of a borrower who sought a loan based on a business plan which the bank deemed sound. FHA denied the bank's loan guaranty application citing several reasons, and the bank appealed to NAD. At hearing, FHA withdrew all but one reason for denying the loan guaranty application, that the business plan's "projected crop income and expenses are not based on the appellant's proven record of production and financial management, including wheat." *Id.* at *5-6. The Hearing Officer determined that "The Appellant has met his burden of proof in

OPINION AND ORDER                                    22                                    {JVA}

showing that the decision to harvest wheat for grain is in accordance with agency regulations." *Id.* at *6. The Hearing Officer reversed FHA's decision and indicated that FHA "would be contacting the Appellant to implement this Determination." *Id.*

The FHA state office asked the national office to seek review and reversal of the NAD determination, but the agency's deputy administrator declined to do so. However, he instructed the state office to "'update' all financial information and to base or create a 'revised' financial plan based on 'current' marketing plans." *Id.* at *6-7. The court noted that none of these instructions "were authorized or required by the hearing officer's decision." *Id.* at *7.

The FHA staff responsible for implementing the NAD determination "refused to do so within 30 days of its finality, as required by 7 U.S.C. § 7000 and 7 C.F.R. § 11.12(a)." *Glickman*, 1998 U.S. Dist. LEXIS 22433, at * 7. Several weeks after the thirty-day implementation period expired, FHA wrote the bank to advise that it would implement the NAD determination, and it instructed the bank to provide updated financial information and new crop appraisals to reflect the then-current market prices and values. FHA "ignored" the original loan guaranty application and the NAD determination, and "insisted that the bank and the borrowers 'start over' with an entirely new application." *Id.* at *8. The bank wrote FHA twice thereafter, first to ask why it had not implemented the NAD determination and a second time to state that the bank should not be required to submit new application materials and that FHA should implement the NAD determination "by issuing a loan note guaranty commitment." *Id.* at *8. For several months thereafter the bank and FHA exchanged letters in which each reasserted their respective interpretations of the NAD determination, ultimately producing no resolution of their disagreement, and the bank filed an enforcement action in district court.

OPINION AND ORDER                           23                                    {JVA}

The district court found that FHA "violated the government statues and regulations by never implementing the NAD determination" because it never implemented the decision by the deadline dates established by statute and regulation. *Id*. at *31. The court also rejected FHA's attempts to rely on a declaration that offered post-hoc rationalizations for the challenged actions and that even if FHA was entitled to review the financial basis of the application for loan guaranty after the NAD determination, FHA was limited to the financial information available at the time of the original application or adverse decision, which facts demonstrated that the borrowers' business plan met the loan guaranty requirements. The court concluded:

> The agency clearly did not implement the NAD decision within its own governing statues and regulations. What the agency did was essentially "stonewall" the appeal determination, ignored the agency's own previous withdrawal and waiver of all reasons for disapproval other than harvested wheat income reason, and found entirely "new" additional reasons in 1996 to assert as a basis for denying the 1995 application. These actions are arbitrary, capricious, and not in accordance with the law.

Id. at *33-34.

RHS's action in the present case are similar to FHA's actions in *Glickman*. RHS did not implement the 2008 NAD Determination within the deadline set by statute and regulation, ignored Schroeder's repeated requests to implement the 2008 NAD Determination, attempted to rely on the previously rejected rationale that it had never made a determination on the data contained in the original CRIA, and ultimately attempted to develop new reasons to support its original denial of Schroeder's prepayment request by conducting a second CRIA using new data not part of original CRIA. These actions were not in accordance with the requirements of the governing statutes and regulations, and were arbitrary and capricious as that standard is applied to agency implementation of NAD determinations.

OPINION AND ORDER                    24                    {JVA}

*3. Satisfaction of additional regulatory requirements*

RHS contends that Schroeder cannot be allowed to prepay because other requirements exist that must be satisfied even if Schroder overcomes both ELIPHA requirements under 7 C.F.R. § 3560.658(b) (2008). RHS asserts this argument for the first time in this court; it made no such argument at the administrative level. For the reasons stated in Section A, above, RHS is precluded from now asserting this argument and relying on new facts to support it.

Furthermore, RHS fails to explain the conflict in its position with the clear language of the statute it has consistently cited as controlling the challenged decision in this case. That statute provides:

> If the borrower does not elect or agree to enter an agreement in accordance with paragraph (a) of this section, then the Agency will assess the impact of prepayment on two factors: housing opportunities for minorities and the supply of decent, safe, sanitary, and affordable housing in the market area. The Agency will review relevant information to determine the availability of comparable affordable housing for existing tenants in the market area and if minorities in the project, on the waiting list or in the market area will be disproportionately adversely affected by the loss of the affordable rental housing units. . . . If the Agency determines that there is no adverse impact on minorities and there is an adequate supply of decent, safe, and sanitary rental housing affordable to program eligible tenant households in the market area *the prepayment will be accepted with no further restriction.*

7 C.F.R. § 3560.658(b) (emphasis added). The statute's language is clear: RHS must accept prepayment without any other restrictions if neither of the prohibited effects will occur. The NAD Determination resolved that question and found that neither prohibited effect would occur from accepting Schroeder's prepayment. Under the statute, RHS must accept Schroeder's prepayment without interposing any further restrictions as preconditions to prepayment.

Finally on this point, that RHS asserted for the first time in this court what it purports to be additional prerequisites to Schroeder's ability to prepay approximates the FHA's conduct in

OPINION AND ORDER                    25                    {JVA}

*Glickman* which the court there described as "stonewalling." If these proffered conditions were additional requirements related to Schroeder's prepayment request, logic compels the conclusion that RHS would have specifically referenced them in its arguments to the NAD Hearing Officer and at least in its post-determination communications in response to Schroeder's requests for implementation. No mention of such conditions or requirements appears in those communications or in the administrative record. As discussed above, such a contention directly contradicts the controlling statute's clear language and RHS fails to explain the discrepancy between this new contention and that statute. For these reasons, the court rejects RHS's argument.

## Conclusion

RHS is required to implement the NAD decision to allow Schroeder to prepay without restriction. A decision of the NAD is "implemented," by taking "those actions necessary to effectuate fully and promptly a final determination of the Division not later than 30 calendar days after the effective date of the final determination." 7 U.S.C. § 6991(8). Accordingly, the court orders RHS to "effectuate fully and promptly" the NAD's decision to permit Schroeder's prepayment. Specifically, the RHS must do so within thirty days of the date of this opinion.

//

//

//

//

## Order

For the reasons above stated, Plaintiff's motion (#12) is GRANTED, Defendants' motion (#21) is DENIED, and Defendants' are ordered to accept Plaintiff's prepayment of her loan and

release her property from related encumbrances within thirty (30) days of the date of this opinion.

IT IS SO ORDERED.

DATED this 21st day of January, 2010.

JOHN V. ACOSTA
United States Magistrate Judge